# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

---

WILILE SANDIFER,                          )
                                          )
    Petitioner/Appellee,              )          Shelby Chancery No.108351-2
                                          )
v.                                        )
                                          )
CIVIL SERVICE MERIT BOARD                 )          Appeal No. W1999-02017-COA-R3-CV
and THE SHELBY COUNTY                     )
CORRECTIONAL CENTER,                      )
                                          )
    Respondents/ Appellants.          )

**FILED**

December 15, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

## APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
## AT MEMPHIS, TENNESSEE

### THE HONORABLE FLOYD PEETE, JR., CHANCELLOR

For the Petitioner/Appellee:

Florence M. Johnson
Memphis, Tennessee

For the Respondents/Appellants:

Donnie E. Wilson
Renee Allen-Walker
Memphis, Tennessee

**REVERSED AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

**OPINION**

This is an employee termination case. An employee of a correctional facility was terminated after confrontations with his supervisor. The employee appealed the termination to the county civil service board. The county board affirmed the decision to terminate the employee. The employee appealed this decision to chancery court, which reversed the board's decision and instead issued a ninety-day suspension without pay from the date of termination. The county appealed the decision of the chancery court. We find that there was material evidence to support the county board's decision to uphold the termination, and that the board's decision was not arbitrary or capricious. Consequently, we reverse the chancery court's decision.

Petitioner/appellee, Willie Sandifer ("Sandifer"), was employed as a correctional officer by respondent/appellant, Shelby County Correctional Center ("Correctional Center"). As a correctional officer, Sandifer was responsible for the care and custody of inmates housed at the Correctional Center. Sandifer and the other correctional officers served under a cadre of superior officers who supervised their work. Sandifer had a very strained relationship with one of the superior officers, Captain Leroy Chambers ("Chambers"). The Correctional Center eventually terminated Sandifer's employment after a series of tense encounters with Chambers that occurred from June 1995 to March 1996.

The problems between Sandifer and Chambers apparently began to surface in June 1995, when Chambers reported that Sandifer called him an obscene name as Chambers conducted a correctional officer roll call. Sandifer stated during an investigation of the incident that he used the obscene name but that he did not use it in reference to Chambers. Sandifer was suspended for five days as a result of the incident. Sandifer filed a grievance contesting the suspension, and a hearing on the grievance was held before the Shelby County Civil Service Merit Board ("Board") on September 25, 1995. After considering the testimony of Sandifer and Chambers, as well as other evidence, the Board affirmed Sandifer's suspension.

On October 31, 1995, Chambers reported to Chester Jones ("Jones"), the operations manager at the Correctional Center, that Sandifer had made obscene gestures toward him when the two met at an intersection outside the Correctional Center. Jones called a meeting on November 6, 1995, to find out what occurred at the incident from both Sandifer and Chambers. The meeting was attended

2

by Darryl Nelson, a correctional officer and union representative, Don Pierce, deputy administrator of the Correctional Center, as well as Chambers and Sandifer. At the end of the meeting, Jones told Sandifer and Chambers that they should conduct themselves professionally in the future and that any future misbehavior would be considered work-related misconduct.

On December 28, 1995, Chambers reported to Jones that he had received a message on the answering machine at his home in which the caller threatened the lives of Chambers and his family. Chambers believed that the caller was Sandifer. Jones asked that Chambers make a copy of the message by taping it directly from the answering machine. Jones listened to the tape and also concluded that the voice belonged to Sandifer. Jones kept the tape of the message.

Jones called another meeting on January 16, 1996, in which he confronted Sandifer with the taped message. Sandifer denied having made the threat. Jones referred Sandifer to the Employee Assistance Program for counseling in conflict resolution. Sandifer attended the counseling sessions, and no further disciplinary action was taken.

After the threatening telephone message, on January 21, 1996, Chambers filed a harassment charge against Sandifer in the Shelby County General Sessions Criminal Court. During the hearing on this charge, Sandifer introduced into evidence a report from voice identification experts which indicated that the voice on the taped message did not belong to Sandifer. The harassment charge was dismissed *nolle prosequi* on October 1, 1996.

On February 28, 1996, Chambers reported to Jones that Sandifer had made derogatory statements toward him during roll call that morning. Chambers testified that Sandifer pointed to him with his hand and stated, "[S]omebody needs to kill that M.F. No, I'm going to kill that M.F. myself." Jones' investigation of the incident included interviewing some of the correctional officers present at the roll call. One of the officers, Gwendolyn Dowdy ("Dowdy"), told Jones that she overheard Sandifer state, "I don't like him and I could kill him." However, Dowdy emphasized that Sandifer did not call anybody's name when he made the statement.

Approximately one week later, Chambers and Sandifer had another encounter. On March 6, 1996, Chambers met Sandifer by chance at a gas station near the Correctional Center. Chambers noticed Sandifer pumping gas into his car when Chambers pulled into the station get gas for his own car. Chambers said that, as he walked by Sandifer on his way out of the station, Sandifer spit at him and yelled "Boy, boy." Jones investigated the incident but he could find no witness who heard

3

Sandifer's statements to Chambers. Nevertheless, on March 16, 1996, Jones suspended Sandifer with pay and restricted him from the Correctional Center. Jones scheduled a pre-termination hearing for March 20, 1996.

At the pre-termination hearing, Jones heard testimony from both Sandifer and Chambers. He also investigated Sandifer's explanation of the incidents in March 1996 and February 1996. Jones ultimately determined that Sandifer represented a "real threat" to the security of the Correctional Center. Consequently, Jones terminated Sandifer's employment effective March 26, 1996, based on acts of misconduct while on duty, intentional failure to carry out instructions, and willful disregard of lawful orders.

Sandifer appealed his termination to the Board. The Board held a hearing on Sandifer's termination on July 16, 1996. At the hearing, the Board heard testimony from Sandifer, Chambers, Jones and Dowdy, as well as a number of other witnesses. The Board also listened to the tape of the threat left on Chambers' telephone answering machine. After considering all of the evidence, the Board upheld Sandifer's termination.

Sandifer then filed a petition for a writ of certiorari with the Shelby County chancery court, seeking review of the Board's decision upholding his termination. Attached to the petition as exhibits were copies of the *nolle prosequi* order dismissing the harassment suit filed against Sandifer and the report from the voice identification experts indicating that the voice on the answering machine message was not that of Sandifer.

Judicial review of the Board's decision was sought pursuant to Tennessee Code Annotated § 27-9-114(b), which provides:

> (1) Judicial review of decisions by civil service boards of a county or municipality which affects the employment status of a county or city civil service employee. . . shall be in conformity with the judicial review standards under § 4-5-322 of the Uniform Administrative Procedures Act.
> (2) Petitions for judicial review of decisions by a city or county civil service board affecting the employment status of a civil service employee shall be filed in the chancery court of the county wherein the local civil service board is located.

Tenn. Code Ann. § 27-9-114(b)(supp. 1999). Tennessee Code Annotated § 4-5-322, referenced in Section 27-9-114(b)(1) above, sets forth the standard for judicial review of employment decisions by such civil service boards. Under Section 4-5-322(h), the court may reverse or modify the Board's decision if the Board's findings or conclusions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the [Board];
(3) Made upon unlawful procedure;
(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(5) Unsupported by evidence which is both substantial and material in light of the entire record.

Tenn. Code Ann. § 4-5-322(h)(1)-(5)(1998). The statute provides further that, in reviewing the substantiality of the evidence, the reviewing court "shall not substitute its judgment for that of the [Board] as to the weight of the evidence on questions of fact." Tenn. Code Ann. § 4-5-322(h).

Pursuant to these statutes, the chancery court heard argument on Sandifer's petition on February 9, 1998. In this proceeding, the Chancellor considered two items that were not presented to the Board, namely, the order regarding expungement of the record on the harassment charge filed against Sandifer and the report by the voice identification experts indicating that the voice on the threatening telephone message was not that of Sandifer. These items were considered by the chancery court in addition to the record of the proceedings before the Board.

On December 18, 1998, the chancery court issued a written ruling reversing the Board's decision. In its written ruling, the chancery court noted that the Board had upheld Sandifer's termination based on its determination that Sandifer "was guilty of the acts of misconduct while on duty, intentional failure to carry out instructions, and willful disregard of orders. . . ." Nevertheless, it found that the Board's decision "was arbitrary, capricious and . . . not supported by substantial evidence in the record." The chancery court ordered that Sandifer be reinstated with full back pay, plus interest, except for a ninety-day period of suspension from the date of his termination. From this order, the Correctional Center now appeals.

On appeal, the Correctional Center argues that the chancery court erred in finding that the Board's decision to terminate Sandifer was not supported by substantial evidence, and in finding that the Board's decision was arbitrary and capricious. The Correctional Center also argues that the chancery court erred in considering evidence not presented to the Board.

Our review of the Board's action is also governed by Tennessee Code Annotated §§ 27-9-114 and 4-5-322(h). On appeal, we may reverse or modify of the Board's action only if the Board acted in violation of constitutional or statutory provisions or in excess of its own statutory authority, followed unlawful procedure, took actions which were arbitrary or capricious action, or acted without material evidence to support its decision. *See Watts v. Civil Service Board for Columbia*, 606

5

S.W.2d 274, 276-277 (Tenn. 1980), *cert. denied*, 450 U.S. 983, 101 S.Ct. 1519, 67 L.Ed.2d 818 (1981). Our review on appeal is no broader than that of the chancery court with respect to the evidence presented before the Board. *See id.*

The Civil Service Merit System was established for employees of Shelby County by Chapter 110, Private Acts 1971. The Act establishes a Civil Service Merit Board, *see* Private Acts, ch. 110, § 3, 494 (1971), with the power and duty to hear employee appeals following removal, suspension or reduction in rank. *See* Private Acts, ch. 110, § 6(d), 497 (1971). The Board has the power to affirm, modify or revoke an order of discipline appealed to it. *See* Private Acts, ch. 110, § 23, 505-06 (1971).

In this case, the Board heard testimony from numerous witnesses concerning Sandifer's behavior toward Chambers. The incidents, ranging from the use of obscene language to making threats on Chambers' life, took place for over a year and continued even after Sandifer had been warned that such behavior would be considered work-related misconduct. Sandifer argues that the chancery court correctly considered his expert's opinion that the voice on the tape of the threatening message did not belong to Sandifer, and that this demonstrates that termination of Sandifer's employment was erroneous. However, even if the threatening telephone message is not considered, the record of incidents before the Board reflects that a poisonous relationship had developed between Sandifer and Chambers that was not diminished by time or discipline.

Although Sandifer denied much of the behavior of which he was accused, the Board had the opportunity to weigh the credibility of his testimony in relation to the other witnesses. Moreover, the Board had the authority to consider the enhanced need for discipline and adherence to supervisory authority in a correctional facility. Clearly there was material evidence to support the Board's decision to uphold Sandifer's termination, and this decision was neither arbitrary nor capricious. Substituting a suspension for termination of Sandifer's employment would be to substitute the judgment of the court for that of the Board, in contravention of Tennessee Code Annotated § 4-5-322(h). Consequently, we conclude that the decision of the chancery court must be reversed and the decision of the Board, terminating Sandifer's employment, must be upheld.

The Correctional Center also argues that the chancery court erred in considering the additional evidence. However, this issue is pretermitted by our reversal of the decision of the chancery court.

6

The decision of the chancery court is reversed, and the case is remanded for any further proceedings consistent with this Opinion. Costs are assessed against Appellee, Willie Sandifer, for which execution may issue if necessary.

_____
_____HOLLY KIRBY LILLARD, J.

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**ALAN E. HIGHERS, J.**